FILED

MAY - 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Hakim ZEIDAN<br>2712 Wisconsin Avenue, N.W.<br>Washington, DC 20007<br>　　　　　　　Plaintiff<br><br>　　　　　vs.<br><br>MICHAEL CHERTOFF, Secretary<br>U.S. Department of Homeland Security<br>Washington, D.C. 20528<br><br>EMILIO GONZALES, Director<br>U.S. Citizenship and Immigration Services<br>20 Massachusetts Avenue, NW<br>Washington, D.C. 20529<br><br>PHYLLIS HOWARD, District Director<br>USCIS Washington District Office<br>2675 Prosperity Avenue<br>Fairfax, VA 22031<br>　　　　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>CASE NUMBER 1:06CV00821<br><br>JUDGE: James Robertson<br><br>DECK TYPE: Administrative Agency Revi<br><br>DATE STAMP: 05/03/2006<br><br>)<br>)<br>)<br>)<br>) |

## PETITION FOR WRIT OF MANDAMUS

Petitioner, Hakim ZEIDAN, hereby requests the Court to issue a writ of

mandamus requiring the United States Citizenship and Immigration Service (USCIS) to

adjudicate his adjustment of status application for permanent residency. The application

was filed in 2001 and all actions required for approval were completed in 2003. Despite

diligent and persistent efforts by Petitioner, and despite government assurances of action,

USCIS has inexplicably and willfully failed to complete this case.

### JURISDICTION

RECEIVED

This Court has jurisdiction over the present action pursuant to 28 U.S.C. Section

1331, Federal Question Jurisdiction; 28 U.S.C. Section 2201, the Declaratory Judgment

Act; 5 U.S.C. Section 702, the Administrative Procedures Act; and 28 U.S.C. Section

1361, regarding an action to compel an officer of the United States to perform his duty.

### VENUE

28 U.S.C. Section 1391(e), as amended, provides that in a civil action in which

each defendant is an officer or employee of the United States or any agency thereof

acting in his official capacity, or under color of legal authority, or any agency of the

United States, the action may be brought in any judicial district in which a defendant in

the action resides or in which the plaintiff resides if no real property is involved in the

action. Plaintiff is a resident of the District of Columbia, and Defendant Department of

Homeland Security is an agency which operates within this district and with headquarters

in Washington, D.C.

### PLAINTIFF

Plaintiff is an applicant for Adjustment of Status to Lawful Permanent Residence

of the United States pursuant to the Immigration and Nationality Act § 245 [8 U.S.C. §

1255], who, at the time he filed his Adjustment of Status Application, was eligible for

Adjustment of Status benefits. Specifically, Mr. Zeidan was, and is, the beneficiary of a

visa petition (known as an "I-140 petition") filed for him by his employer which had been

approved by the USCIS and the petition had and still has a "current priority date",

meaning that an immigrant visa is available to be issued Mr. Zeidan in this category.

Mr. Zeidan is a forty year old Israeli citizen and the single parent of a nine year

old U.S. citizen son. He has been a resident of the District of Columbia for seventeen

years. He arrived in the United States in 1990 and has not left this country since his

arrival. In 1997, he received a Bachelor of Architecture Degree, *cum laude*, and a Master

of Architecture Degree in 2005. He has worked for the firm of Gordon and Greenberg Architects of Maryland since 1998 and is the beneficiary of an approved immigrant petition filed by them.

### DEFENDANTS

Defendant, Michael Chertoff, is the duly appointed Secretary of the Department of Homeland Security (DHS). Emilio Gonzales is the duly appointed Director of the United States Citizenship and Immigration Services (USCIS). Director Phyllis Howard is the duly appointed District Director of the Fairfax District Office of USCIS, who has failed to act on the processing of the instant Application for Adjustment of Status.

### FACTUAL ALLEGATIONS

On August 8, 2001, an "Application to Adjust Status," (form I-485) was filed with the Vermont Service Center of the then Immigration and Naturalization Service by Plaintiff, Hakim Zeidan, on the basis of his approved I-140 petition[1], "Immigrant Petition for Alien Worker," filed by the employer Gordon and Greenberg Architects. The case was transferred to the District Office in Fairfax Virginia on August 23, 2002. Mr. Zeidan was scheduled for a fingerprint appointment for the week of July 6, 2003, and had an interview with the USCIS on August 13, 2003. The case has languished since then. When Mr. Zeidan filed his adjustment of status petition with the USCIS, he was advised that the application would take between six and eighteen months to be completed. During his interview on August 13, 2003, he was told that his name had been submitted for a security check in January of 2003. Although the standard time for this procedure is between two weeks and six months, the check had not been completed by the time of his interview. In May of 2004, Mr. Zeidan's counsel began inquiries on the status of the

---

[1]. The I-140 petition was approved on July 24, 2001.

petition.   He wrote and spoke to Plaintiff's case officer in July of 2004 and January of 2005, but was unable to discover the basis for the delay.

On September 4, 2004, Plaintiff received a telephone call from his sister in Israel advising him that his father was admitted to the hospital and would have to undergo surgery.  However, if he left the U.S. before the USCIS finished processing his application for adjustment of status, he would be barred from reentry to the U.S. *See* 8 U.S.C. 1182; INA Section 212(a)(9)(B)(i)(II) (any alien unlawfully present in the U.S. for one year or more is inadmissible for 10 years).  If he applied for and received Advance Parole in order to return, he would still be barred from reentry for a period of ten years.  Deciding that he could not risk his professional future as well as the fifteen years he had spent in the U.S., he did not go to visit his father.

In October of 2004, Petitioner wrote to Senator Barbara Mikulski and to Senator Paul Sarbanes, seeking their help.  By letter dated November 1, 2004, Senator Sarbanes, wrote that he had received a letter from USCIS, Arlington District Office, (the Arlington District Office changed its location in 2004 and is now the Fairfax District Office) stating that Petitioner's adjustment of status application was pending completion of all background security checks.  Although he did not receive any information as to time frames, he said that written notification would be sent as soon as the final decision was reached.

In December of 2004, Plaintiff sent an e-mail to the Criminal Justice Information Services of the FBI, explaining his situation and asking for help in resolving the case. Not until May, 2005, did he receive a response.  It said that that FBI had completed Plaintiff's background check on ***October 28, 2003***, a year and a half before and two

months after his interview and had forwarded the results to USCIS headquarters in Washington, DC.

Plaintiff and his counsel continued to try to find out the status of the application and to press for resolution of the case.

In May of 2005, counsel wrote to Mr. Robert Schofield at the Fairfax District Office of CIS. Mr. Schofield was the supervisor of the officer who had interviewed Mr. Zeidan. Counsel sent Mr. Schofield a copy of the e-mail message that Mr. Zeidan had received from the FBI Name Check Program Section, stating that his name check had been completed and forwarded to USCIS headquarters in October of 2003 and asking why the case could not, therefore, be completed. In June, 2005, counsel wrote to the USCIS Fairfax District Office, expressing dismay at the delay in Mr. Zeidan's application, and attaching the e-mail received by Mr. Zeidan from the FBI. Because visas would become unavailable for skilled workers and professionals on July 1, 2005, counsel asked that this case be approved in the next 13 days, while visas would still be available, so that Mr. Zeidan, who had been waiting for years, did not have a new reason why his case could not be finished.

During an Infopass Appointment at the USCIS District Office in Fairfax, Virginia, on June 17, 2005, counsel was informed that the name check report was received by USCIS in March of 2005. However, the officer could not say specifically where the report was. On the same day, counsel sent an e-mail to the FBI National Name Check Office to the attention of the person who had previously written to Mr. Zeidan. Counsel stated that he had been in touch with the Fairfax District Office of USCIS and that they had no record of the receipt of the completed name check. He asked for the

contact information for the person or persons at USCIS headquarters to whom this report had been sent.

During an Infopass appointment at the USCIS District Office in Fairfax, Virginia, on June 20, 2005, Plaintiff was told that the USCIS headquarters had received his name check report in March of 2005. Plaintiff again contacted the FBI and was told that the name check information had been forwarded to the Fairfax District Office on June 24, 2005. Therefore, by June of 2005, both the FBI and the USCIS District Office were in agreement that the name check had been completed and received by the USCIS headquarters.

On June 28, 2005, Counsel met with the Director of the Fairfax District Office and found out that when she had last checked, which had been during the preceding week, the name check report was not in Plaintiff's file. However, Counsel knew from Mr. Zeidan that the name check information had allegedly been sent to the Fairfax District Office on June 24, 2005. Counsel then sent an e-mail to the District Office Director, asking her to confirm that the name check had been completed. Counsel also asked the Director, in the event that the report was still not in the file, to arrange to have it sent to her office as soon as possible because visas for skilled workers such as Mr. Zeidan would become unavailable in two days from the date of his writing.

There was no progress on the matter and, on July 1, 2005 visas temporarily became unavailable. In October and November of 2005, when visas were again available, Counsel and Plaintiff scheduled and attended two more appointments at the USCIS Fairfax District Office, and were unable to find out anything more about the status of Mr. Zeidan's application. On January 31, 2006, Counsel wrote to the Office of the Inspector

General of the U.S. Department of Justice, and also to the Inspector General of the U.S.

Department of Homeland Security, urging the offices to act without delay in resolving the

processing of Mr. Zeidan's case and his name check report. Plaintiff scheduled and

attended appointments at the USCIS Fairfax District Office again in October and

November of 2005, and on March 16, 2006, but could find out nothing more about the

case. By letter dated March 24, 2006, Mr. Zeidan was informed by a USCIS Information

Program Specialist that the USCIS had received the FBI security checks, but that the I-

485 petition was still pending. On April 21, 2006, Counsel telephoned the USCIS

Information Program Specialist who had written to Mr. Zeidan, and she confirmed that

the USCIS had indeed received the FBI security checks.

During this period, Mr. Zeidan also applied for and received employment

authorizations. Employment authorizations must be applied for every year, involving

administrative costs and filing fees.

As support for the facts stated herein, attached are Exhibit A, Affidavit of Hakim

Zeidan; Exhibit B, Affidavit of David Rothwell, Counsel for Plaintiff; and Exhibit C,

March 24, 2006 letter from Pamela Ball, USCIS, to Hakim Zeidan.

The adjustment of status petition has now been pending for close to five years,

and nearly three of those years have been simply waiting for a completed FBI name

check report. Since Mr. Zeidan has received notice that the name check report has been

received, there is no conceivable reason for the delay in adjudicating his adjustment of

status petition.

**ARGUMENT**

7

This court has jurisdiction to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff" through the issuance of a writ of mandamus. 28 U.S.C. § 1361. The Plaintiff must demonstrate: (1) a clear right to the relief sought; (2) the defendant has a duty to perform the requested act; and (3) there is no other adequate remedy. *Iddir v. INS*, 301 F.3d 383 (7th Cir. 2002); *Yu v. Brown*, 36 F.Supp.2d 922 (D.N.M. 1999). The requested action should be "ministerial" and not discretionary. *Yu, supra* (and citations therein). It is well-established that the DHS has a mandatory duty to adjudicate adjustment of status petitions within a reasonable time, which may be enforced through mandamus. *See, e.g., Yu, supra; Paunesco v. INS*, 76 F.Supp.2d 896 (N.D.Ill.1999). While DHS has the discretion over the ultimate decision of whether to grant LPR status, it must act in a reasonable amount of time. *Yu, supra.*

The D.C. Circuit has identified six factors to be considered in determining whether "the agency's delay is so egregious as to warrant mandamus." *TRAC v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). Those factors are:

1. whether the time taken by the agency is reasonable;

2. whether the statutory scheme provides a context for a timeframe;

3. whether the delay affects human health and welfare ("delays that might be reasonable in the scheme of economic regulation are less tolerable when human health and welfare are at stake");

4. whether expediting delayed action will affect other agency priorities;

5. the nature and extent of the interests prejudiced by delay; and

6.  whether any agency impropriety is present, although impropriety is not essential

in order to find unreasonable delay.

*Id.* "There is 'no *per se* rule as to how long is too long' to wait for agency action, *In re*

*Int'l Chem. Workers Union,* 958 F.2d at 1149, but a reasonable time for agency action is

typically counted in weeks or months, not years." *In Re American Rivers,* 372 F.3d 413,

419 (D.C. Cir. 2004).   In the context of adjustment of status cases, the decision depends

on the facts of the individual case. *Yu, supra.*  In the *Yu* case, the court found that the

agency had unreasonably delayed an application of status adjustment that had been

pending for two and a half years, and complete for more than a year. *See also, Galvez v.*

*Howerton,* 503 F.Supp. 35 (C.D.Cal. 1980) (six month delay in processing adjustment of

status unreasonable); *Dabone v. Thornburgh,* 724 F.Supp. 195 (E.D.Pa. 1990)(nineteen

month delay in processing an unopposed motion to reopen a deportation proceeding

unreasonable).

Applying the *TRAC* analysis to the facts of this case results in a conclusion that

the agency has unreasonably delayed action.

1.      The time taken by the agency is unreasonable.  A two-year delay is, on its face,

substantial. *See, e.g., Yu, supra; Galvez, supra; Dabone, supra.*

2.      While no statutory timetable governs this action, the delay in this case is

excessive, especially in light of the fact that everything necessary for processing the

application has been complete for over two years.

3.      Human welfare is at stake.  The adjudication of adjustment of status affects the

welfare of the applicants and is not part of a scheme of economic regulation, so that

delays are more damaging to the applicants.

4.    Adjudication of this case will not interfere with other agency priorities. This is not a case where the applicant is asking for expedited efforts which may divert agency resources. All information necessary to evaluate the petition is and has been in the possession of the agency for at least three years.

5.    The interests prejudiced by the delayed agency action are important and substantial. Uncertainty regarding employment status poses significant difficulties and is highly prejudicial to an immigrant. *Dabone v. Thornburgh*, 724 F.Supp. 195, 202 (E.D.Pa. 1990). Mr. Zeidan's family unity is also threatened by the extended wait, and his chances of seeing his father alive again are diminished daily.

6.    The excessive delay is evidence of agency impropriety. While the motivation behind USCIS's dilatory behavior remains unclear, it is evident that the Plaintiff has been given conflicting and erroneous information over a period of time and has refused to respond whatsoever to persistent and strenuous requests for action.

As in the *Paunesco* case, Mr. Zeidan has been the victim of a "bureaucratic nightmare." Although he has continually attempted to comply with government requests, "none of the responsible parties coordinated their efforts" to finalize processing of this case. *Paunesco*, 76 F.Supp.2d at 902. Mr. Zeidan's case bears a striking resemblance to the *Paunesco* case, in which the successful plaintiffs sued for mandamus relief when their applications remained unadjudicated for over two years because of a problem clearing fingerprint checks with the FBI. Plaintiff has no where to turn but this Court.

As a result of Defendants' willful and unreasonable delay in adjudicating Plaintiff's Adjustment of Status Application, Plaintiff has been unable to visit his family or stabilize his employment situation. Both he and his employers are suffering the

10

insecurity of Plaintiff's uncertain legal status. Plaintiff has been forced to continually file for and pay for yearly employment authorizations. Despite repeated efforts, and repeated offers to do anything necessary, Plaintiff has been unable to find out the reason for the delay. The only reason previously offered by the USCIS, that the FBI security check was pending, no longer exists. The agency has everything it needs to make a decision. There is no plausible reason for the agency's continued refusal to act, and Plaintiff is aware of no reason to deny his petition.

## CLAIM FOR RELIEF

Defendants willfully, and unreasonably, delayed and refused to adjudicate, the adjustment of status application of the Plaintiff, thereby depriving him of the benefit to which he is entitled under the Immigration and Nationality Act. Defendants owe Plaintiff the duty to act upon his adjustment application, and have unreasonably failed to perform that duty. Plaintiff has provided all relevant information and facts. Strong humanitarian factors genuinely exist in these circumstances. Plaintiff's father has been seriously ill, but he has been unable to visit him, nor can plaintiff bring his young son to Israel to meet his family. Because of his current legal status, Plaintiff cannot leave the country. Although he is entitled to adjust status while residing in this country, if he left before the application is approved, he would be barred from returning. Even if he was able to return under Advance Parole, he would be barred from getting permanent residency for a period of ten years. Because of the failure to adjudicate his application for adjustment of status, his employment status is uncertain from year to year.

Plaintiff has been a positive, productive resident of this country for many years and would sacrifice the life he has established here, and his career – and harm his

employers, who depend upon him – if he were to leave.  Mr. Zeidan has contributed a

great deal to this country and will likely continue to do so, as he is an accomplished

architect and an important asset to his employer.  Plaintiff does not have a criminal record

or any other record, and is not tied to any political, criminal, terror or any other entity or

organization.  Until his adjustment of status petition is adjudicated, his life is on hold.

Plaintiff has exhausted any administrative remedies that may exist.  No other

remedy exists for Plaintiff to resolve Defendant's delay than the relief Plaintiff requests

from this Court.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that a writ of mandamus be issued requiring

Defendants to adjudicate Plaintiff's immigration petition by a date certain; grant such

other and further relief as this Court deems proper under the circumstance; and grant

attorneys fees and costs of court.

Dated:  May 2, 2006

Respectfully Submitted,

David J. Rothwell
Attorney for Plaintiff
DC Bar 255 778
O'Toole, Rothwell, Nassau & Steinbach
1350 Connecticut Ave NW, Suite 200
Washington, DC 20036
202-775-1550

12

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **Hakim ZEIDAN,** | | ) |
| | Plaintiff | ) |
| | | ) |
| | **vs.** | ) |
| | | ) |
| **MICHAEL CHERTOFF, Secretary, DHS** | | ) |
| **EMILIO GONZALES, USCIS Director** | | ) |
| **PHYLLIS HOWARD, USCIS District Director** | | ) |
| | | ) |
| | Defendants | ) |

## AFFIDAVIT OF HAKIM ZEIDAN

1.  My name is Hakim Zeidan.  I am a forty year old Israeli citizen and the single
    parent of a nine year old U.S. citizen son.  I have been a resident of the District of
    Columbia for seventeen years.  I arrived in the United States in 1990 and have not
    left this country since my arrival.

2.  In 1997, I received a Bachelor of Architecture Degree, *cum laude*, and a Master of
    Architecture Degree in 2005, *summa cum laude*.  I have worked for the firm of
    Gordon and Greenberg Architects of Maryland since 1998 and am the beneficiary
    of an approved immigrant petition filed by them.

3.  When I filed my adjustment of status petition with the USCIS in August of 2001,
    I was advised that the application would take between six and eighteen months to
    be completed.

4.  Officer Charles Sam of the USCIS Arlington District Office interviewed me on
    August 13, 2003 for my adjustment of status petition.  I was told by Officer Sam
    that my name had been submitted for a security check in January of 2003.

**06 0821**

**FILED**

MAY - 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Although the standard time for this procedure is between two weeks and six months, the check was not completed. He also said that the worst case he had ever seen was ten months. Officer Sam said he would look into the matter and get back to my lawyer. He said that he was reserving an immigrant visa for me in anticipation of completion of the security check.

5.  On September 4, 2004, I received a telephone call from my sister in Israel advising me that my father was admitted to the hospital and would have to undergo surgery.

6.  My attorney, David Rothwell, advised me that if I left the U.S. before the USCIS finished processing my case, I would not be able to return to this country, and if I was able to return under Advance Parole, I would be barred from getting permanent residency for a period of ten years.

7.  I could not risk my professional future as well as the fifteen years I have spent in this country. Therefore, I did not go to visit my father.

8.  In October of 2004, I wrote to Senator Barbara Mikulski, seeking her help. I also wrote to Senator Paul Sarbanes.

9.  I received a letter from Senator Sarbanes dated November 1, 2004, stating that he received a letter from USCIS, Arlington District Office, stating that my adjustment of status application was pending completion of all background security checks. Although he did not receive any information as to time frames, he said that written notification would be sent to me as soon as the final decision was reached.

10. On December 16, 2004, I e-mailed an address given to me by a customer service representative from the Criminal Justice Information Services of the FBI. I explained my situation and asked for help in resolving my case.

11. On May 7, 2005, I received an e-mail response from the FBI to my e-mail of December 16, 2004. It was signed by Michael A. Cannon, Chief, National Name Check Program Section, Records Management Division. It said that that FBI had completed a background check on me on October 28, 2003 and had forwarded the results to USCIS headquarters in Washington DC.

12. During an Infopass appointment at the USCIS District Office in Fairfax, Virginia, on June 20, 2005, I was told by June Williams that the USCIS headquarters received my name check report in March of 2005.

13. I contacted the person I know at the FBI and was told that the name check information had been forwarded to the Fairfax District Office on June 24, 2005.

14. I went to Infopass appointments at the USCIS Fairfax District Office in October and November of 2005, and again on March 16, 2006, but could find out nothing more about my case.

15. My employer has written numerous letters on my behalf to Senator Sarbanes, President Bush, and the Vermont Service Center.

16. Each year that my adjustment of status has been pending, I have had to file for a new employment authorization document and pay the administrative costs and filing fees.

17. In December of 2006, I applied to renew my EAD with the USCIS Fairfax office. I was told that it should be mailed to the Vermont Service Center. Then I was

told that it was a mistake to send it to Vermont. This resulted in a problem in demonstrating my legal status to the District of Columbia Department of Motor Vehicles.

18. I have contributed a great deal to this country and will continue to contribute. I will never be a tax burden and I am a productive resident. I have gladly filed and paid taxes since 1992. I am an accomplished architect and an important asset to my employer.

19. I do not have a criminal record or any other record. I am not tied to any political, criminal, terror or any other entity or organization. I am a law obeying resident of the District of Columbia.

20. Until my adjustment of status petition is adjudicated, my life is on hold. My employment status is uncertain from year to year. My father might not live long and I greatly desire for my son to meet his family.

Signed under the pains and penalties of perjury this __21__ day of March, 2006.

_____
Hakim Zeidan

*Subscribed and sworn to, before me this* 21 *day of* March *, 2006*

*My commission expires:*    Olga Q. Blumenstock    *Seal:*
Notary Public, District of Columbia
~~County of~~ District of Columbia    My Commission Expires 12-14-2007

*Signature of notary:* Olga Q. Blumenstock

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Hakim ZEIDAN,                       )
                    Plaintiff          )
                                  )
         vs.                         )
                                  )
MICHAEL CHERTOFF, Secretary, DHS    )
EMILIO GONZALES, USCIS Director      )
PHYLLIS HOWARD, USCIS District Director  )
                                  )
                  Defendants     )

## AFFIDAVIT OF DAVID J. ROTHWELL

I, David J. Rothwell, hereby state and depose the following:

1.      My name is David J. Rothwell. I am an attorney licensed to practice in the District of Columbia and my Board of Bar Overseers number is 255778. I am a partner in the law firm of O'Toole, Rothwell, Nassau & Steinbach. Our address is 1350 Connecticut Avenue N.W., Suite 200, Washington D.C., 20036. Our telephone number is 202-775-1550.

2.      I am counsel of record for the Plaintiff Hakim Zeidan in his petition for mandamus before this Court and for his adjustment of status petition submitted to the United States Citizenship and Immigration Services (CIS).

3.      As part of the processing of the adjustment of status, Mr. Zeidan was interviewed on August 13, 2003 by Officer Charles Sam of the USCIS Arlington District Office. He was informed that his name had been submitted for an FBI background check in January 2003. Although this process generally takes

**06 0821**

**FILED**

MAY – 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

between two weeks and six months, Officer Sam said it had not yet been
completed.

4.  In or about May of 2004, through the organization the American Immigration
    Lawyers Association (AILA), I made an inquiry to Mr. Robert Schofield, Mr.
    Sam's supervisor at the Fairfax District Office of CIS about the status of this
    case. I was told that the problem is that there was an arrest showing on the FBI
    report and that we had not admitted to an arrest on the I-485.

5.  On May 21, 2004, I wrote to Officer Sam about Mr. Zcidan's adjustment case,
    and told him of my contact with Mr. Schofield. In that letter, I wrote that we had
    said "yes" to the question of whether Mr. Zeidan had ever been arrested and
    supplied USCIS with a certified copy of the record showing that the case was
    nolle prossed.

6.  On July 14, 2004, I saw Officer Sam personally. He informed me that the
    problem was not the arrest but he could not give me the reason for the delay.

7.  On January 28, 2005, I again wrote to Officer Sam. I emphasized the long wait
    my client had suffered and the frustration we had experienced in that at no time
    had anyone in the District Office agreed to give the matter individualized personal
    attention. I also expressed frustration at the inconsistent reports over what we
    could do to remedy the problem and requested a specific response.

8.  In March of 2005, I attended an Infopass appointment at the USCIS Fairfax
    District Office to try to find out the status of Mr. Zeidan's application.

9.  On May 21, 2005, I again contacted Mr. Robert Schofield. I copied an e-mail
    message that Mr. Zeidan had received from the FBI Name Check Program

Section, stating that his name check had been completed and forwarded to USCIS headquarters. I asked Mr. Schofield to tell me what this FBI report meant, so that I could explain this to my client.

10. On June 17, 2005, I wrote to the USCIS Fairfax District Office, and again expressed dismay at the delay in Mr. Zeidan's application. I attached an e-mail received by Mr. Zeidan from the FBI which stated that it had forwarded the completed name check to USCIS headquarters on October 28, 2003. Because visas would become unavailable for skilled workers and professionals on July 1, 2005, I asked that this case be approved in the next 13 days, while visas would still be available, so that Mr. Zeidan, who had been waiting for years, did not have a new reason why his case could not be finished.

11. During an Infopass Appointment at the USCIS District Office in Fairfax, Virginia, on June 17, 2005, I was informed by June Williams that the name check report was received by USCIS in March of 2005. However, she could not say specifically where the report was. I understood from her that within 60 days of the receipt of the name check report, it would be forwarded to the District Office.

12. Also on June 17, 2005, I sent an e-mail to the FBI National Name Check Office to the attention of Michael A. Cannon, the person who had previously written to Mr. Zeidan. I stated that I had been in touch with the Fairfax District Office of USCIS and that they had no record of the receipt of the completed name check. I asked for the contact information for the person or persons at USCIS headquarters to whom this report had been sent.

3

13. On June 28, 2005, I had a meeting with Phyllis Howard, the Director of the Fairfax District Office of USCIS. I understood from her that when she last checked Mr. Zeidan's case, which had been during the preceding week, the name check report was not there. However, I knew from Mr. Zeidan that the name check information went to the Fairfax District Office on June 24, 2005.

14. I sent Ms. Howard an e-mail that afternoon, asking her to confirm that the name check had been completed. In the event that the report was still not in his file, I also asked that she arrange to have it sent to her office as soon as possible because visas for skilled workers such as Mr. Zeidan would become unavailable in two days from the date of my writing.

15. In October and November of 2005, I had two more Infopass appointments at the USCIS Fairfax District Office. I was unable to find out anything more about the status of Mr. Zeidan's application.

16. On January 31, 2006, I wrote to the Office of the Inspector General of the U.S. Department of Justice, urging the office to act without delay in resolving the processing of Mr. Zeidan's case and his name check report. I also wrote to the Inspector General of the U.S. Department of Homeland Security, with the same message.

17.    On April 21, 2006, I spoke to Ms. Pamela Ball, a USCIS Information Program

Specialist who had written to Mr. Zeidan about the status of his I-485 and his FBI

security checks. She confirmed that the USCIS had indeed received the FBI

security checks.

Signed under the pains and penalties of perjury this ___2___ day of May, 2006.

David J. Rothwell, Esq.


Subscribed and sworn to, before me this _2_ day of __May__, 2006

My commission expires:                                                        Seal:

Olga Q. Blumenstock
Notary Public, District of Columbia
My Commission Expires 12-14-2007

~~County of~~ District of Columbia

Signature of notary:

5